OA 91  Criminal Complaint

# United States District Court

| NORTHERN | DISTRICT OF | CAILFORNIA |
|---|---|---|

| UNITED STATES OF AMERICA | FILED | CRIMINAL COMPLAINT |
|---|---|---|

V.

Debra Edison
a/k/a Debra Legum Edison
a/k/a Debra Sue Legum-Edison

**FILED**

JUN 2 8 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CRIMINAL COMPLAINT

Case Number: 3 07 70386

**BZ**

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my

knowledge and belief. On or about  June 8, 2007  in  San Francisco  County, in

the  Northern  District of  California, and elsewhere  defendant(s) did,

(Track Statutory Language of Offense)

alter and falsify documents with the intent to impede, obstruct, and influence the investigation and proper administration of any matter within
the jurisdiction of any department or agency of the United States

in violation of Title **18**  United States Code, Section(s) **1519**  .

I further state that I am a(n) **Special Agent with the F.B.I.**  and that this complaint is based on the

Official Title

following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:   ☒ Yes    ☐ No

Approved
As To
Form:   Jeffrey Finigan
AUSA

Mandy Britton/
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

June 27, 2007
Date

at  San Francisco, CA
City and State

Bernard Zimmerman,  U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|       v. | )   **AFFIDAVIT OF SPECIAL AGENT** |
| | )   **MANDY BRITTON** |
| DEBRA LEGUM EDISON, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

This affidavit is submitted in support of a criminal complaint and request for a no-bail arrest warrant for the arrest of DEBRA LEGUM EDISON. Also known as DEBRA LEGUM, DEBRA S. LEGUM, DEBRA S. EDISON, DEBRA SUE LEGUM-EDISON, and DEBRA LEGUM EDISON.

### Agent Background

1.    I, Mandy Britton, first being duly sworn, depose and state that I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in that capacity since May 4, 2003. I am currently assigned to the San Francisco Field Office of the FBI. I am specifically assigned to investigate, among other things, white collar crime matters such as corporate fraud, securities fraud, bank fraud, conspiracy, mail fraud, and wire fraud.

2.    I am a Certified Public Accountant (CPA), licensed in the state of California. Prior to joining the FBI, I was employed as an auditor for approximately two and one half years with Deloitte & Touche, LLP.

3.    I am the case agent assigned to investigate allegations of wire fraud by Michael J. Edison (Edison), President and Chief Executive Officer of Private Wealth Management Group, LLC (PWMG) and allegations of obstruction of justice by Edison and his wife, Debra Legum Edison (Debra Edison).

4.    During the course of the investigation, I have obtained information from the following sources: interviews conducted by Special Agents of the FBI, documents and information

1

obtained by various individuals and entities, including Wells Fargo Bank (Wells Fargo), First Bank of Puerto Rico, Countrywide Home Loans (Countrywide), Union Bank of California, Fidelity National Title (Fidelity), Stewart Title of California (Stewart Title), the law offices of Allen Matkins Leck Gamble & Mallory LLP, search of boxes owned by Edison stored at American Archiving & Shredding LLC, and Michael Thorman of the law firm Bonjour, Thorman, Baray & Billingsley . The information contained in this affidavit is based on information obtained from these sources.

## **Complaint, Arrest and Indictment of Michael Edison**

5.    On December 22, 2006 a criminal complaint, case number 3-06-70833, against Edison regarding allegations that he committed wire fraud against Jean Phleger, the victim, was filed in the United States District Court, Northern District of California. The Honorable Bernard Zimmerman, U.S. Magistrate Judge, issued an arrest warrant for Edison simultaneously with the complaint. True and correct copies of the complaint and arrest warrant are attached hereto collectively as Exhibit A. On February 10, 2007, Edison was arrested in Atlanta, Georgia.

6.    On February 13, 2007, a grand jury in the Northern District of California indicted Edison was for three counts of Title 18 U.S.C. § 1343 (Wire Fraud) regarding the fraudulent acts Edison committed against Phleger in the Northern District of California and elsewhere. The case is United States v Edison, CR 07-0074 WHA, and a true and correct copy of the indictment is attached hereto as Exhibit B.

7.    On February 15, 2007, a detention hearing was held before the Honorable E. Clayton Scofield, III, U.S. Magistrate Judge, in Atlanta, Georgia. Judge Scofield ordered Edison detained on a $2,500,000 bond along with other enumerated conditions. On or about March 9, 2007, Edison was transported to the Santa Rita Jail in Dublin, California, where he has remained since then.

## **The Edisons' Scheme to Obstruct Justice**

8.    On or about February 3, 2007, a letter from Edison to his wife, Debra Edison, was intercepted by law enforcement. Edison sent the letter from the Santa Rita Jail to his wife in Zurich, Switzerland.

9.    Edison's letter to Debra Edison started with the words "Read and Destroy." The letter then reads "This letter is the 'most important thing I have Ever asked you to do.'" Edison advised Debra Edison "you must stay in Switzerland until we can determine it is safe for you to return."

10.   In the letter Edison requested that Debra Edison assist him in gathering documents that were stored in various places. Debra Edison was instructed by Edison to gain control

2

over certain documents and have them sent to her in Switzerland. Some of the instructions Edison gave Debra Edison are as follows:

a.   "We 'must' manage the release of the documents that are in the black suitcases – some need to be destroyed and others worked on."

b.   While referring to documents they held in storage in New Jersey, Edison told her that there were three "larger boxes that Hold the most important Records personnal (sic) that we don't want 'anyone' to get." Edison told his wife "you can send them slowly but you must get them out of their now."

c.   Edison told Debra Edison that she would have to sort the files in order to send documents back to the attorneys and that "How well we do this will spell the difference between Jail & Freedom (sic) (emphasis in original)."

11.   Edison also provided detailed instructions for Debra Edison to create false documents to make it appear as if the victim, Jean Phleger, loaned Edison the money he was indicted for stealing. Specifically, Edison's letter told Debra Edison the following:

a.   "You 'must help me create' a Note that is missing from the files you have it is the most important document and ill send in via separate over but you must make sure it is created without any errors. Very Carefully follow the following . . . Don't go near or ever talk to anyone about this"

b.   Edison wrote detailed steps for Debra Edison to follow as she created this document. The steps included instructions on what type font (new times roman) to type the document in and what size paper to use. Edison also instructed Debra Edison to find someone from "The Yellow Pages" to type the document. She was instructed to not use any computer that they owned to create this document and she was told to stand over the hired individual while the document was being typed. Debra Edison was told by Edison to pay cash, to obtain a copy of the computer disk and to destroy the disk. Edison told Debra Edison not to "Leave them Alone with it. It wont take more than 30-40 minutes its only 2-or tHREE Pages."

c.   Edison told Debra Edison to have the hired individual run a completed draft of the document on 9 ½" paper with his original signature at the bottom. Debra Edison was told by Edison to use "the ten pages I am signing in blank." She was told to "make sure she gets the Note in such away that the text matches."

d.   Edison instructed Debra Edison to make three copies once a good original note was completed. She was then instructed to destroy the original, the computer disk and any receipts for service.

3

e.    Edison then states: "All we need is a copy of the note and the memorandum which I sent you earlier. Did you get it? If so tell me that Rosie's Had a Birthday on the phone when it's done - then it needs to be put with some other files that we send to the attorneys - send it with a bunch of other paper and let them find it by themselves."

12.    Edison ended his letter by writing "Please help me with this. It's the only thing that will allow me to win this thing."

13.    Included with the letter to Debra Edison were drafts of a handwritten Promissary Note and a Memorandum purporting to document a loan from Jean Phleger to Edison. Both documents were dated August 1, 2005.

a.    The Promissary Note stated that Edison promised to pay Phleger $2,200,000 with interest accruing at eight percent. The principal and interest were due on or before August 1, 2008. The note is signed only by Edison. On the bottom of this document were the words "Make Sure Spelling is Correct Very Important."

b.    The Memorandum is from Edison to Jean Phleger. At the top of the document it stated "CHECK SPELLING & GRAMMAR." The document thanks Jean Phleger for her support for the development stage of Edison's technology investments. Edison explains that Jean Phleger will have the option to exchange the note for common stock of any public company that he developed during the time the note was outstanding.

14.    On June 8, 2007, Edison's attorney, Michael Thorman of Bonjour, Thorman, Baray & Billingsley, told AUSA Jeffrey Finigan and me that he obtained documents from Debra Edison evidencing the fact that Edison borrowed the money from Phleger that he was accused of stealing. Thorman stated that he had copies of a promissory note and a memorandum of understanding.

15.    On June 21, 2007, Mr. Thorman produced a Promissory Note and a Summary Memo of Loan Agreement Between Jean Phleger and Edison to AUSA Finigan. The documents were not identical to the drafts Edison sent to Debra Edison, as described herein at ¶16, but they were very similar.

a.    The Promissory Note was dated August 1, 2005 and was signed only by Edison. The loan amount per the note was $2,250,000. The note date, the due date and interest rate of eight percent are the same on both the draft and the produced note. In addition, both the intercepted note and the produced note are only signed by Edison.

4

b. The Summary Memo of Loan Agreement Between Jean Phleger and Edison produced by Thorman was dated August 2, 2005. The memo was signed only by Edison and stated that Edison appreciated the extension of the personal loan dated August 2, 2005. The memo also stated that Phleger had the option to exchange the note in all or part for the stock of any Public Company which emerges at the same basis as Edison's.

16. On May 1, 2007, Special Agents from the Federal Bureau of Investigation, Newark, New Jersey Field Office, conducted a search of 25 boxes owned by Edison that were stored at American Archiving & Shredding LLC. The boxes contained documents related to Jean Phleger. No copies of the documents produced by Mr. Thorman were found within these boxes.

17. Jean Phleger has stated that she never gave permission to Edison to take her money or to do anything with it other than pay her bills and make payments to certain family members.

18. Micah Heisler and Jason Sellers were employees of Edison and worked closely with Edison during the time that Edison was associated with Jean Phleger. Heisler assisted Phleger and Edison in obtaining a line of credit and a mortgage loan for Phleger. Sellers assisted Phleger and Edison in setting up a Trust and a Limited Liability Company for Phleger. Sellers was aware of Edison arranging for Phleger to obtain a mortgage loan. Although both Heisler and Sellers were aware of Edison's indictment for defrauding Phleger, neither ever stated that Edison borrowed approximately $2,000,000 from Phleger.

## Obstruction of Justice

19. Based on the foregoing, I respectfully submit that there is probable cause to believe that Debra Edison has committed Obstruction of Justice, in violation of Title 18 U.S.C. § 1915, by creating the two false documents described in ¶18.

## Basis For Sealing Affidavit and Complaint

20. Based on information obtained during the investigation, I believe Debra Edison will flee if she learns of this Complaint and arrest warrant before she is arrested. I also believe that her husband, Michael Edison, would make every effort to inform Debra Edison of the existence of this Complaint and arrest warrant if he learned of them. I base these opinions on the following facts. Edison advised Debra Edison to remain in Switzerland until it was safe to come to the U.S. I am aware from my investigation that the Edisons have extensive experience in international travel and living in foreign countries. Given the amount of money Edison stole from Jean Phleger, I also have reason to believe that the Edisons may have assets hidden in places or banks that I have not yet discovered.

5

Based on information obtained during the investigation, I believe the Edisons have been in Colorado, Nevada, New York, London, the U.S. Virgin Islands, the British Virgin Islands, and Zurich, Switzerland, over the last year.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

MANDY BRITTON
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me on this 28 day of June 2007, in San Francisco, California.

BERNARD ZIMMERMAN
United States Magistrate Judge

6

OA 91 Criminal Complaint

# United States District Court

NORTHERN      DISTRICT OF      CALIFORNIA

UNITED STATES OF AMERICA
V.

Michael Edison

**CRIMINAL COMPLAINT**

Case Number: **3 06 70833**

~~UNDER SEAL~~

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about August 31, 2005 in San Francisco County, in
(Date)
the Northern District of California defendant(s) did,

(Track Statutory Language of Offense)

devise and intend to devise a scheme and artifice to defraud Jean Phleger as to a material matter, and to obtain money and property belonging to Jean Phleger by means of materially false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted by means of wire in interstate commerce, any writing, signs, and signals, for the purpose of executing such scheme and artifice

in violation of Title 18 United States Code, Section(s) 1343 .

I further state that I am a(n) Special Agent with the F.B.I. and that this complaint is based on the
Official Title
following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Approved
As To
Form: Jeffrey Finigan
AUSA

Mandy Britton
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

December 22, 2006
Date

at San Francisco, CA
City and State

Bernard Zimmerman,      U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

Ex "A"



UNITED STATES OF AMERICA      )
                              )
                              )
        v.                    )        **AFFIDAVIT OF SPECIAL AGENT**
                              )        **MANDY BRITTON**
                              )
MICHAEL J. EDISON             )
_____)

     This affidavit is submitted in support of a criminal complaint and request for a no-bail arrest warrant for the arrest of MICHAEL J. EDISON.

### Agent Background

1.     I, Mandy Britton, first being duly sworn, depose and state that I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in that capacity since May 4, 2003. I am currently assigned to the San Francisco Field Office of the FBI. I am specifically assigned to investigate, among other things, white collar crime matters such as corporate fraud, securities fraud, bank fraud, conspiracy, mail fraud, and wire fraud.

2.     I am a Certified Public Accountant (CPA), licensed in the state of California. prior to joining the FBI, I was employed as an auditor for approximately two and one half years with Deloitte & Touche, LLP.

3.     I am the case agent assigned to investigate allegations of wire fraud by Michael J. Edison (Edison), President and Chief Executive Officer of Private Wealth Management Group, LLC (PWMG).

4.     During the course of the investigation, I have obtained information from the following sources: interviews conducted by Special Agents of the FBI, documents and information obtained by various individuals and entities, including Wells Fargo Bank (Wells Fargo), First Bank of Puerto Rico, Countrywide Home Loans (Countrywide), Union Bank of California, Fidelity National Title (Fidelity), Stewart Title of California (Stewart Title), and the law offices of Allen Matkins Leck Gamble & Mallory LLP. The information contained in this affidavit is based on information obtained from these sources.

## Edison's Scheme to Defraud

5.  In approximately May 2005, Jean Phleger (Phleger), was looking for someone to manage various aspects of her finances, since the person in that capacity for Phleger at that time was moving away from San Francisco. At all times relevant to this affidavit, Phleger resided at two different properties in the Northern District of California. Phleger had heard of Edison because Edison had handled financial transactions for her son-in-law.

6.  Phleger met with Edison in person in May 2005 in Woodside, California. Edison told Phleger that he owned the company PWMG and that he had approximately 12,000 clients. According to Phleger, Edison offered to provide his services to Phleger on a pro-bono basis and Phleger was under the impression Edison was doing so because Edison was also doing work for her son-in-law. Edison told Phleger that he would oversee Phleger's insurance policies, budget (including paying Phleger's bills), and finances. Phleger never gave Edison permission to use or take any of her money for any other purpose than to satisfy her personal obligations or to make loans to family members.

7.  When Phleger first met Edison, she had a line of credit with Wells Fargo that had been taken out against her residence at 2*** Green Street, Apartment *, San Francisco, California. Edison proposed obtaining an increased line of credit for Phleger on the Green Street property. Edison told Phleger that the funds from the increased line of credit would be used to retire the existing line of credit and then to pay for Phleger's various living expenses for the duration of her life. Based on Edison's representations, Phleger and Phleger's representatives provided Edison with access to Phleger's Green Street property and confidential financial-related information, such as Phleger's social security number and various bank account numbers.

8.  In July 2005, Phleger flew to Nevada to meet with Edison and sign documents related to obtaining the new line of credit with Wells Fargo as referred to above in paragraph 7. Phleger did not have an attorney with her. Phleger does not recall the specific documents she signed in July 2005, but recalls that Edison represented to her that they were related to a line of credit.

9.  In August 2005, while Phleger was in New York City, Edison contacted her and advised her that she needed to execute additional documents for him. Phleger met Edison at a hotel in New York and, based on her conversation with Edison at that time, Phleger understood that she was signing additional documents related to the line of credit referred to in paragraph 7.

10. In approximately October or November 2005, Edison advised Phleger that he was making arrangements with a bill paying service to pay Phleger's bills for her. In November 2005, Phleger began receiving calls from various entities advising her that various bills were not being paid. When Phleger contacted Edison about the unpaid bills, he advised her that he

2

was still in the process of setting up the bill paying service.

11.    In January 2006, Phleger retained an attorney, Mary White, for purposes of estate planning services and to help Phleger determine exactly what Edison was doing in connection with Phleger's finances. As of that point in time, Phleger's bills were still not being paid. On January 31, 2006, White and Phleger conducted a conference call with Edison from White's office in Palo Alto, California. Edison represented during the call that he had obtained a line of credit on Phleger's Green Street property from Countrywide Mortgage. White subsequently researched Phleger's position with Countrywide and learned that Edison had obtained two loans, not a line of credit, for $3.3 million and $550,000, against Phleger's Green Street property. When White asked Phleger for documentation related to the Countrywide loans, Phleger advised White that Edison had never provided Phleger with any documentation of any line of credit or loan he had obtained on her behalf. White also contacted Countrywide and learned that the statements for Phleger's two loan accounts were being sent to addresses not associated with Phleger.

12.    On February 1, 2006, White faxed a request to Edison for all documents related to Phleger's loans, assets, and liabilities. White received a voice mail on February 2, 2006, from one of Edison's associates that she would receive the aforementioned requested information by FedEx the next day, i.e. February 3, 2006. White never received any documents from Edison and her subsequent efforts to contact Edison were unsuccessful. Phleger has since been unable to locate Edison or to recoup virtually all of the money Edison obtained in Phleger's name, as set forth in more detail below. Phleger is also currently embroiled in civil litigation related to efforts to foreclose on her Green Street property due to Edison's actions.

## Edison's Fraudulent Financial Transactions

13.    In May 2005, Edison opened a joint bank account at Wells Fargo, account number 520-*******, in his and Phleger's names. The address for the joint account was in Las Vegas, Nevada. Although documentation related to the account appears to bear Phleger's signature, Phleger does not recall signing such documentation, does not recall Edison ever informing her of the joint account, and did not give Edison permission to open such a joint account.

14.    As of August 2005 the balance on Phleger's existing line of credit on the Green Street property, referred to above in paragraph 7, was approximately $959,000.

15.    On or about August 30, 2005, Edison obtained a new loan or line-of-credit with Wells Fargo in Phleger's name and secured by Phleger's Green Street property in the amount of $1,470,000.00.

3

a. Fidelity National Title was the escrow company used to close Phleger's new loan or line of credit with Wells Fargo.

b. On or about August 29, 2005, after deducting various fees, Wells Fargo wired $1,461,658.40 to Fidelity's bank account associated with this transaction, i.e., Washington Mutual bank in Seattle, Washington ("WAMU").

c. On or about August 30, 2005, WAMU, on behalf of Fidelity, wrote a check or checks totaling $959,328.54 to Wells Fargo to pay off Phleger's initial line of credit as described in paragraph 14.

d. On or about August 31, 2005, WAMU wired the remaining $500,383.66 (after deducting closing costs) to the Edison/Phleger joint Wells Fargo bank account referred to in paragraph 13. Although the Edison/Phleger joint Wells Fargo account was located in Las Vegas, Nevada, the wire from WAMU passed through San Francisco, California, as part of Wells Fargo's processing protocol.

16. In September 2005, Edison obtained two loans with Countrywide Mortgage in Phleger's name and secured by Phleger's Green Street property. The loans were for $3,300,000 and $550,000, respectively. Although documentation related to the loans appears to bear Phleger's signature, Phleger does not recall signing such documentation, does not recall Edison ever informing her about the loans, and did not give Edison permission to obtain the loans.

a. Countrywide's bank account associated with this transaction was with Bank of New York. The title company for this transaction was Stewart Title located in San Francisco, California, and Stewart Title's bank account associated with this transaction was with Union Bank of California.

b. On and between about September 21 and 23, 2005, the Bank of New York wired a total of approximately $3,850,000 to Union Bank of California to hold the funds in escrow.

c. On or about September 23, 2005, Union Bank issued a check in the amount of $1,477,032.29 to Wells Fargo to pay off the line of credit Edison obtained in Phleger's name as set forth in paragraph 15.

d. On or about September 26, 2005, Union Bank wired $2,306,713.79 to the Wells Fargo joint Edison/Phleger account in Las Vegas, Nevada, account number 520-*******, from Union Bank in Los Angeles, California. Although the Edison/Phleger joint Wells Fargo account was located in Las Vegas, Nevada, the wire from Union Bank passed through San Francisco, California, as part of Wells Fargo's processing protocol.

4

17.     Between August 31, 2005, and August 31, 2006, Edison transferred, via electronic
        transfer or check, money from the Edison/Phleger joint Wells Fargo account, account
        number 520-*******, to the accounts listed below, all of which have Edison and/or
        Edison's wife, Debra S. Legum-Edison, as account holders. Phleger had no control over
        any of the accounts below, did not authorize the aforementioned transactions, and had no
        knowledge of the aforementioned transactions.

        a.      First Bank of Puerto Rico bank accounts:

                i.      713-******* in the name of Edison & Co. LLC
                ii.     713-******* in the name of Michael J. Edison
                iii.    713-******* in the name of Debra S. Legum- Edison
                iv.     713-******* in the name of Wealth Mgmt Group LLC
                v.      713-******* in the name of Edison & Co. LLC
                vi.     729-******* in the name of Edison Investment Holdgs

        b.      Wells Fargo accounts:

                i.      357-******* in the name of Private Wealth Mgmt Grp
                ii.     724-******* in the name of Michael J. Edison
                iii.    W623***** in the name of Michael J. Edison
                iv.     906-******* in the name of Private Wealth Mgmt Grp
                v.      724-******* in the name of Debra S. Legum-Edison
                vi.     906-******* in the name of Private Wealth Mgmt Grp
                vii.    5474 **** **** **** in the name of Private Wealth
                viii.   4856 **** **** **** in the name of Private Wealth

18.     Phleger has been unable to recover the vast majority of the money Edison obtained in her
        name as set forth above. Based on information obtained during this investigation, I have
        been able to trace the funds obtained by Edison in Phleger's name as described herein and
        have determined that between August 31, 2005, and August 31, 2006, Edison spent the
        money obtained through Phleger's line of credit from Wells Fargo and Phleger's refinance
        loans from Countrywide on personal luxury items and his own personal expenses, for
        example:

        a.      $350,000.00 toward the purchase of an airplane;

        b.      $220,122.42 on airplane or airline related expenses;

        c.      $259,190.60 on business related expenses;

        d.      $209,510.66 cash withdrawals;

5

e.     $171,225.25 loss on Edison's personal investment account held at Wells Fargo;

f.     $63,764.60 on boat and car related expenses;

g.     $49,077.46 on hotel and restaurant expenses;

h.     $26,080.08 on shopping expenses related to stores, such as Macy's, KMart, Perfume Place, Larianna Boutique, Best Buy, High Society Resale Boutique, Foot Locker; and

i.     $6,500.00 on artwork. ·

## **Wire Fraud**

19.    Based on the foregoing, I respectfully submit that there is probable cause to believe that Edison has committed wire fraud, in violation of Title 18 U.S.C. § 1343. Specifically, Edison devised and intended to devise a scheme and artifice to defraud Phleger as to a material matter, and to obtain money and property belonging to Phleger by means of materially false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted by means of wire in interstate commerce, any writing, signs, and signals, for the purpose of executing such scheme and artifice.

## Basis For Sealing **Affidavit and Complaint**

20.    Based on information obtained during the investigation, I believe Edison has fled and is purposefully ignoring and avoiding all efforts to contact him regarding his dealings with Phleger. A private investigator hired by Phleger has made extensive efforts to locate Edison since January 2006, to no avail. For example he conducted numerous interviews with former Edison employees in an effort to locate Edison and he or his colleague traveled to St. Thomas in the U.S. Virgin Islands to pursue information indicating Edison had opened a business there. I have also made efforts to locate Edison since August 2006 and have been unsuccessful. For example I have reviewed Edison's bank and phone records and spoken with FAA officials in order to locate Edison, but I have been unable to establish exactly where Edison is located. Based on information obtained during the investigation, I believe Edison has been in Colorado, Nevada, New York, London, the U.S. Virgin Islands, the British Virgin Islands, and Zurich, Switzerland, over the last year. Based on information obtained during the investigation, I believe Edison owns an airplane, is extremely mobile, and currently only passes through the United States on a very infrequent basis. In addition, I know that several individuals who worked for Edison during the scheme described herein have been contacted by Phleger's private investigator and the FBI and that Phleger has obtained a default judgment against Edison in San Francisco Superior Court as a result of Edison's fraud. Thus, I believe there is a high

6

likelihood that Edison is aware he is being sought in connection with his dealings with Phleger and that he is actively avoiding being caught.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


MANDY BRITTON
Special Agent
Federal Bureau of Investigation


Sworn to and subscribed before me on this 2 2 day of December 2006, in San Francisco, California.

BERNARD ZIMMERMAN
United States Magistrate Judge

7

AO 442    (Rev. 10/03) Warrant for Arrest

# UNITED STATES DISTRICT COURT

Northern    District of    California

UNITED STATES OF AMERICA

V.

**WARRANT FOR ARREST**

Michael Edison

Case Number:

$B2$

3-06 70833

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest

Michael Edison

Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☐ Indictment  ☐ Information  ☒ Complaint  ☐ Order of court  ☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice

charging him or her with    (brief description of offense)

defrauding Jean Phleger of approximately $500,000

in violation of Title  18 _____    United States Code, Section(s)    1343

Bernard Zimmerman
_____
Name of Issuing Officer                          Signature of Issuing Officer

United States Magistrate Judge                  12/22/2006
_____
Title of Issuing Officer                         Date and Location

| RETURN |
|--------|
| This warrant was received and executed with the arrest of the above-named defendant at |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---------------|-------------------------------------|--------------------------------|
| DATE OF ARREST | | |

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☑ INDICTMENT
☐ SUPERSEDING

#### OFFENSE CHARGED

Counts 1 - 3: 18 U.S.C. Section
1343 - Wire Fraud

☐ Petty
☐ Minor
☐ Misdemeanor
☑ Felony

PENALTY:

Each count: 20 years prison; 3 years supervised release;
$250,000 fine; and $100 mandatory special assessment

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

**FILED**

FEB 1 3 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

—— DEFENDANT - U.S. ——

▶ Michael Edison

DISTRICT COURT NUMBER

CR 07 0074

**WHA**

—— PROCEEDING ——

Name of Complaintant Agency, or Person (&Title, if any)
F.B.I.

☐ person is awaiting trial in another Federal or State
Court, give name of court

☐ this person/proceeding is transferred from another
district per (circle one) FRCrP 20, 21 or 40. Show
District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on
motion of:                         **SHOW**
☐ U.S. Att'y ☐ Defense    **DOCKET NO.**

☐ this prosecution relates to a
pending case involving this same
defendant                          **MAGISTRATE**
☑ prior proceedings or appearance(s)    **CASE NO.**
before U.S. Magistrate regarding
this defendant were recorded under    3 06 70833 BZ

Name and Office of Person
Furnishing Information on
THIS FORM              **KEVIN V. RYAN**

☑ U.S. Att'y ☐ Other U.S. Agency

Name of Asst. U.S. Att'y
(if assigned)    Jeffrey R. Finigan

—— DEFENDANT ——

**IS NOT IN CUSTODY**

Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons
was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☑ On this charge

5) ☐ On another conviction
6) ☐ Awaiting trial on other charges } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer  ☐ Yes    If "Yes"
been filed?   ☐ No   } give date
filed

**DATE OF** ▶    Month/Day/Year
**ARREST**    2/10/2007

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED** ▶    Month/Day/Year
**TO U.S. CUSTODY**

☐ This report amends AO 257 previously submitted

—— ADDITIONAL INFORMATION OR COMMENTS ——

PROCESS:
☐ SUMMONS ☑ NO PROCESS* ☐ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance    *Where defendant previously apprehended on complaint, no new summons
or warrant needed, since Magistrate has scheduled arraignment
Defendant Address:

Date/Time:

Before Judge:

Comments:

EX "B"

1   KEVIN V. RYAN (CASBN 118321)
    United States Attorney
2

3

4

5

6
                    E-filing
7

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11
                              **CR** No. **07    0074**
12  UNITED STATES OF AMERICA,

13       Plaintiff,                   )   VIOLATIONS: 18 U.S.C. § 1343 –
                                      )   Wire Fraud; 18 U.S.C. § 981(a)(1)(C) and
14  v.                                )   28 U.S.C. § 2461(c) – Forfeiture Allegation
                                      )
15                                    )
    MICHAEL EDISON,                   )   SAN FRANCISCO VENUE
16       a.k.a. Michael J. Edison,    )

17       Defendant.                   )
                                      )
18  _____  )

19

20

21                      I N D I C T M E N T

22  The Grand Jury charges:

23  COUNTS ONE, TWO AND THREE:  (18 U.S.C. § 1343 – Wire Fraud)

24                      INTRODUCTION

25       At all times relevant to this indictment:

26       1.      Defendant MICHAEL EDISON was a resident of Nevada who represented that he

27  owned a financial services company named Private Wealth Management Group ("PWMG") and

28  that he had approximately 12,000 clients.


INDICTMENT                          1

**1**    2.    The victim of the scheme to defraud, Jean Phleger (hereafter Phleger), was a

**2**    resident of the Northern District of California. Phleger owned and resided at two different

**3**    properties in the Northern District of California, including one located on Green Street in San

**4**    Francisco, California (the "Green Street Property").

**5**                                THE SCHEME TO DEFRAUD

**6**    3.    Between in or around May 2005 and February 2006, in the Northern District of

**7**    California and elsewhere, the defendant,

**8**

**9**                                MICHAEL EDISON,
                                 a.k.a. Michael J. Edison,

**10**    did knowingly and with intent to defraud, devise a material scheme and artifice to defraud, and to

**11**    obtain money and property belonging to Phleger and others by means of materially false and

**12**    fraudulent pretenses, representations, and promises, well knowing that the pretenses,

**13**    representations and promises were materially false when made.

**14**    4.    The purpose of the scheme to defraud was for EDISON to enrich himself by

**15**    inducing Phleger to provide him with access to and control over Phleger's finances, in exchange

**16**    for EDISON's false promise to manage Phleger's finances for Phleger's benefit. It was further

**17**    part of the scheme to defraud that once EDISON obtained a certain level of control over

**18**    Phleger's finances, he would apply for loans, mortgages, and/or lines of credit with Phleger's

**19**    Green Street Property as collateral and then convert the funds from those loans, mortgages,

**20**    and/or lines of credit for his own personal use. EDISON carried out this scheme by making

**21**    materially false statements to Phleger, including, but not limited to, falsely telling Phleger that he

**22**    had 12,000 clients, falsely telling Phleger that he intended to manage Phleger's finances solely

**23**    for her benefit, and falsely telling Phleger that he would use her assets to pay Phleger's bills for

**24**    her.

**25**    5.    The defendant's scheme to defraud resulted in a loss of more than $2,000,000 to

**26**    the victim.

**27**                        MANNER AND MEANS OF THE SCHEME

**28**    6.    In approximately May 2005, Phleger was looking for someone to manage various

INDICTMENT                                2

1 aspects of her finances and had heard of EDISON because EDISON had handled financial
2 transactions for a relative.

3        7.       Phleger met with EDISON in person in May 2005 in Woodside, California.
4 EDISON told Phleger that he owned the company PWMG and that he had approximately 12,000
5 clients. EDISON offered to provide his services to Phleger on a pro-bono basis, and Phleger was
6 under the impression EDISON was doing so because EDISON was also doing work for her
7 relative. EDISON told Phleger that he would oversee Phleger's insurance policies, budget
8 (including paying Phleger's bills), and finances. Phleger never gave EDISON permission to use
9 or take any of her money for any purpose other than to satisfy her personal obligations or to make
10 loans to Phleger's family members.

11       8.       When Phleger first met EDISON, she had a line of credit with Wells Fargo Bank
12 ("WFB") that had been taken out against the Green Street Property. EDISON proposed obtaining
13 an increased line of credit for Phleger on the Green Street Property. EDISON told Phleger that
14 the funds from the increased line of credit would be used to retire the existing line of credit and
15 then to pay for Phleger's various living expenses for the duration of her life. Based on EDISON's
16 representations, Phleger and Phleger's representatives provided EDISON with access to the
17 Green Street Property and confidential financial-related information, such as Phleger's social
18 security number and various bank account numbers.

19       9.       In or around July 2005, Phleger flew to Nevada to meet with EDISON and sign
20 documents related to obtaining the new line of credit with WFB as referred to above in paragraph
21 7. EDISON represented to Phleger that the documents she signed were related to a line of credit.

22       10.      In or around August 2005, while Phleger was in New York City, EDISON
23 contacted her and advised her that she needed to execute additional documents for him. Phleger
24 met EDISON at a hotel in New York and, based on her conversation with EDISON at that time,
25 Phleger understood that she was signing additional documents related to the line of credit
26 referred to in paragraph 7.

27       11.      In or around October or November 2005, EDISON advised Phleger that he was
28 making arrangements with a bill paying service to pay Phleger's bills for her. In November

INDICTMENT                                                 3

1   2005, Phleger began receiving calls from various entities advising her that various bills were not
2   being paid. When Phleger contacted EDISON about the unpaid bills, he advised her that he was
3   still in the process of setting up the bill paying service. EDISON never paid Phleger's bills as
4   EDISON promised.

5   12.    In or around January 2006, Phleger retained an attorney (the "Attorney") to assist
6   her with estate planning and to help Phleger determine exactly what EDISON was doing in
7   connection with Phleger's finances. As of that point in time, Phleger's bills were still not being
8   paid as EDISON had promised. On January 31, 2006, the Attorney and Phleger participated in a
9   conference call with EDISON from the Attorney's office in Palo Alto, California. EDISON
10  represented during the call that he had obtained a line of credit on the Green Street Property from
11  Countrywide Mortgage ("Countrywide"). The Attorney subsequently researched Phleger's
12  position with Countrywide and learned that EDISON had obtained one loan and one line of
13  credit, for $3,300,000 and $550,000, respectively, against the Green Street Property. EDISON
14  had never provided Phleger with any documentation of any line of credit or loan he had obtained
15  on her behalf. The Attorney also contacted Countrywide and learned that the statements for
16  Phleger's two loan accounts were being sent to addresses not associated with Phleger.

17  13.    On February 1, 2006, the Attorney faxed a request to EDISON for all documents
18  related to Phleger's loans, assets, and liabilities. The Attorney received a voice mail on February
19  2, 2006, from one of EDISON's associates that she would receive the requested information by
20  FedEx the next day, i.e. February 3, 2006. The Attorney never received any documents from
21  EDISON, and her subsequent efforts to contact EDISON were unsuccessful. Phleger has since
22  been unable to contact or locate EDISON or to recoup the vast majority of the money EDISON
23  obtained in Phleger's name, as set forth in more detail below.

24              EDISON'S FRAUDULENT FINANCIAL TRANSACTIONS

25  14.    In or around May 2005, EDISON opened a joint bank account at WFB, account
26  number 520-*******, in EDISON's and Phleger's names. The address for the joint account was
27  in Las Vegas, Nevada, where EDISON also had a residential address at that time. Phleger was
28  unaware that EDISON opened the joint account.

INDICTMENT                                        4

1    15.    As of August 2005, the balance on Phleger's existing line of credit on the Green

2    Street Property, referred to above in paragraph 8, was approximately $957,000.

3    16.    In or around August 2005, Edison obtained a new line of credit with WFB in

4    Phleger's name and secured by the Green Street Property in the amount of $1,470,000. The

5    pertinent details of the transaction are as follows:

6            a.    Fidelity National Title ("Fidelity") was the escrow company used to close

7                  Phleger's new line of credit with WFB.

8            b.    On or about August 29, 2005, after deducting various fees, WFB wired

9                  $1,461,658.40 to Fidelity's bank account associated with this transaction,

10                 i.e., Washington Mutual bank in Seattle, Washington ("WAMU");

11           c.    On or about August 30, 2005, WAMU, on behalf of Fidelity, wrote a

12                 check or checks totaling $957,813.54 to WFB to pay off Phleger's initial

13                 line of credit as described in paragraph 15;

14           d.    On or about August 31, 2005, WAMU wired the remaining $500,383.66

15                 (after deducting closing costs) to the EDISON/Phleger joint WFB account

16                 referred to in paragraph 14. The wire from WAMU passed through San

17                 Francisco, California, as part of WFB's processing protocol.

18   17.    In or around September 2005, EDISON obtained the loan and line of credit with

19   Countrywide in Phleger's name and secured by the Green Street Property. The loan and line of

20   credit were for $3,300,000 and $550,000, respectively. Phleger was unaware that EDISON

21   obtained the loan and line of credit. The pertinent details of the transactions are as follows:

22           a.    Countrywide's bank account associated with these transactions was with

23                 Bank of New York. The title company for the transactions was Stewart

24                 Title located in San Francisco, California, and Stewart Title's bank

25                 account associated with the transactions was with Union Bank of

26                 California ("UBOC");

27           b.    On or about September 2, 2005, EDISON sent a facsimile to UBS

28                 Financial Services Inc., in San Francisco, California, requesting Phleger's

INDICTMENT                                    5

1                       account information. EDISON thereafter obtained such account

2                       information pursuant to his facsimile request and used that information in

3                       obtaining the mortgage with Countrywide.

4            c.    Between on or about September 21 and 23, 2005, the Bank of New York

5                   wired a total of approximately $3,850,000 to UBOC to hold the funds in

6                   escrow.

7            d.    On or about September 23, 2005, UBOC issued a check in the amount of

8                   $1,477,032.29 to WFB to pay off the line of credit EDISON obtained in

9                   Phleger's name as set forth in paragraph 16;

10          e.    On or about September 26, 2005, UBOC wired $2,306,713.79 to the

11                EDISON/Phleger joint WFB account referred to in paragraph 14 from

12                UBOC in Los Angeles, California. The wire from UBOC passed through

13                the Federal Reserve in Kansas City, Missouri, and San Francisco,

14                California, as part of WFB's processing protocol.

15     18.    Following the transactions described above in paragraphs 16 and 17, EDISON

16  withdrew for his own personal use or transferred from the EDISON/Phleger joint WFB account

17  to numerous accounts having EDISON and/or EDISON's wife, Debra S. Legum-Edison, as

18  account holders, more than $2,000,000. Phleger had no control over any of the accounts to

19  which the money was transferred, did not authorize the aforementioned withdrawals or transfers,

20  and had no knowledge of the aforementioned withdrawals and transfers.

21                               USE OF THE WIRES

22     19.    On or about the dates set forth below, in the Northern District of California

23  and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud,

24  EDISON did knowingly transmit and caused to be transmitted the following wire communication

25  in interstate commerce:

26  ///

27  ///

28  ///

INDICTMENT                6

| Count | Approximate Date Of Wire | Route of Wire | Description of Wire |
|-------|--------------------------|---------------|---------------------|
| ONE | August 31, 2005 | Seattle, WA to Las Vegas, NV, via San Francisco, CA | $500,383.66 wire transfer from WAMU to the EDISON/Phleger joint WFB account |
| TWO | September 2, 2005 | Henderson, NV to San Francisco, CA | Facsimile from EDISON to UBS Financial Services Inc. in San Francisco requesting Phleger's account information and statements |
| THREE | September 26, 2005 | Los Angeles, CA to Las Vegas, NV, via San Francisco, CA | $2,306,713.79 wire transfer from UBOC to the EDISON/Phleger joint WFB account |

All in violation of Title 18, United States Code, Section 1343.

<u>FORFEITURE ALLEGATION</u>:    (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) - Forfeiture of Specified Unlawful Activity (Wire Fraud) proceeds)

20.    The allegations of Counts ONE, TWO and THREE of this Indictment are

realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture

pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c).

21.    Upon a conviction of any of the offenses alleged in Counts ONE, TWO or

THREE, the defendant,

MICHAEL EDISON,
a.k.a. Michael J. Edison,

shall forfeit to the United States all property, constituting and derived from proceeds traceable to

said offenses, including but not limited to the following property:

        a.    a money judgment equal to the amount of the proceeds obtained from the

offense; and

        b.    airplane (1978 Cessna Citation, serial # 501-0065, tail # N33WW).

        If any of said property, as a result of any act or omission of the defendant-

INDICTMENT                                7

1          a.      cannot be located upon the exercise of due diligence;

2          b.      has been transferred or sold to or deposited with, a third person;

3          c.      has been placed beyond the jurisdiction of the Court;

4          d.      has been substantially diminished in value; or

5          e.      has been commingled with other property which cannot be subdivided

6    without difficulty; any and all interest defendant has in other property shall be vested in the

7    United States and forfeited to the United States pursuant to Title 21, United States Code, Section

8    853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Rule 32.2 of the

9    Federal Rules of Criminal Procedure.

10

11   DATED: February 13, 2007                    A TRUE BILL.

12

13                                               FOREPERSON

14
     KEVIN V. RYAN
15   United States Attorney

16

17
     MARK L. KROTOSKI
18   Chief, Criminal Division

19

20   (Approved as to form:                    )
                          AUSA FINIGAN
21

22

23

24

25

26

27

28

     INDICTMENT                          8

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☑ COMPLAINT ☐ INFORMATION ☐ INDICTMENT
☐ SUPERSEDING

---- OFFENSE CHARGED ----

18 U.S.C. Section 1519 -
Obstruction of Justice

☐ Petty
☐ Minor
☐ Misde-
    meanor
☑ Felony

PENALTY:

20 years prison; 3 years supervised release; $250,000 fine;
and $100 mandatory special assessment

---

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

---- DEFENDANT - U.S. ----

Debra Edison

DISTRICT COURT NUMBER

---

---- PROCEEDING ----

Name of Complaintant Agency, or Person (&Title, if any)
F.B.I.

☐ person is awaiting trial in another Federal or State
Court, give name of court

☐ this person/proceeding is transferred from another
district per (circle one) FRCrP 20, 21 or 40. Show
District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on
motion of:
☐ U.S. Att'y ☐ Defense

☐ this prosecution relates to a
pending case involving this same
defendant

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding
this defendant were recorded under

**SHOW**
**DOCKET NO.**

**MAGISTRATE**
**CASE NO.**

Name and Office of Person
Furnishing Information on
THIS FORM         KEVIN V. RYAN

☑ U.S. Att'y ☐ Other U.S. Agency

Name of Asst. U.S. Att'y
(if assigned)    Jeffrey R. Finigan

---

---- DEFENDANT ----

**IS *NOT* IN CUSTODY**

1) ☑ Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons
   was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other
   charges

} ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of Institution

Has detainer
been filed?
☐ Yes
☐ No

If "Yes"
give date
filed

**DATE OF**
**ARREST**

Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED**
**TO U.S. CUSTODY**

Month/Day/Year

☐ This report amends AO 257 previously submitted

---

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:

☐ SUMMONS ☐ NO PROCESS*  ☑ WARRANT   Bail Amount: None

If Summons, complete following:

☐ Arraignment ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons
or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments: